IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-02905-PAB

AURELIO KNUDSON,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

# ORDER

This matter is before the Court on plaintiff Aurelio A. Knudson's complaint [Docket No. 1] filed on November 30, 2010. Plaintiff seeks review of the final decision of defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g), and the matter is ripe for disposition.[1]

## I. BACKGROUND

Plaintiff applied for disability benefits on March 29, 2007, R. at 113, alleging a disability onset date of July 1, 2006. After an initial denial, an Administrative Law Judge ("ALJ") held a hearing on February 17, 2009. R. at 21. The ALJ denied plaintiff's claim

---

[1] Neither party requests oral argument, *see* Docket No. 10 at 3, ¶ 9, and the Court concludes that the appeal can be resolved based on the parties' filings.

for disability in a decision dated August 4, 2009. R. at 21. In his decision, the ALJ found that plaintiff had the "following severe impairments: degenerative disc disease of the cervical, thoracic and lumbar spine; mild tendinopathy/tendinosis and subacromial bursal edema of the right shoulder joint, status-post surgical repair; right lateral epicondylitis," R. at 12, but that these impairments, alone or in combination, did not meet one of the listed impairments in the regulations. *See* R. at 13. The ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that, when using the right upper extremity only, he would be limited to lifting and carrying within the sedentary exertional range; he should alternate between sitting, standing and/or walking, as needed; there should be occasional reaching with the right upper extremity; there should be no climbing of ladders, ropes or scaffolds and occasional climbing of ramps and stairs, stooping, kneeling, crouching and crawling; and he should avoid concentrated exposure to extreme cold.

R. at 13.

Based on these findings and the testimony of a vocational expert ("VE"), the ALJ found that, although plaintiff could not perform his past relevant work, he could perform jobs that exist in significant numbers in the national economy. R. at 18. Therefore, the ALJ concluded that plaintiff was not disabled during the relevant time period. R. at 20. The Appeals Council denied plaintiff's request for review of this denial. R. at 1. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether

the decision is supported by substantial evidence as a whole.  *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty*, 515 F.3d at 1070.  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).

Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity ("RFC") to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant

has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts."  *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C.   Plaintiff's Objections to the ALJ Decision

In his appeal, plaintiff presents four objections to the ALJ's decision: (1) the ALJ failed to weigh the medical opinions accurately; (2) the ALJ erroneously found that plaintiff's subjective complaints were not credible; (3) the ALJ's RFC determination was not based on substantial evidence; and (4) the ALJ did not meet his burden at step five.

#### *1.   Medical Opinions*

Under the treating source rule, the Commissioner generally gives greater weight to the opinions of treating physicians than to the opinions of non-examining physicians. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).  The steps needed to determine whether a treating physician's opinion merits controlling weight are sequential.  *Id*.  First, the ALJ must consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques."  *SSR 96-2p*, 1996 WL 374188, at *2 (July 2, 1996).  If the answer to this question is "no," then the inquiry at this stage is complete.  *Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005).  If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record.  *Id.*  In other words, if the opinion is deficient in either of these respects, then it is not entitled controlling weight.  *Id.*  If an ALJ decides not to assign controlling weight to a treating source's opinion, he must give "specific,

legitimate reasons for his decision." *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001); *see Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *SSR 96-8p*, 1996 WL 374184, at *7 (July 2, 1996) (if the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was adopted).

Plaintiff argues that the ALJ failed to give appropriate weight to the opinions of Dr. Laurence Lopez, Docket No. 11 at 18, and Dr. Kristin A. Furfari. *Id*. at 22. Additionally, plaintiff challenges the weight given to several other medical opinions arguing that the ALJ failed to provide "an adequate explanation [for] its smorgasbord" approach in dealing with the medical opinions. *Id*. at 24.

### a. Dr. Laurence Lopez

Plaintiff argues that the ALJ's partial rejection of Dr. Lopez's opinion was in error because the ALJ may not argue that a treating physician was unduly swayed by a patient's subjective complaints. Docket No. 11 at 20. Additionally, plaintiff claims that the ALJ erred because he did not address the 2001 Magnetic Resonance Imaging ("MRI") results. *Id*.

On September 12, 2008, Dr. Lopez reported that, during a regular 8-hour workday, plaintiff could sit for four hours, stand or walk for up to two hours, could lift up to ten pounds, did not have to lie down during the day because of pain, and could occasionally use his hands. R. at 319. On that same day, Dr. Lopez's physical examination showed that plaintiff had a normal gait, normal muscle strength, normal straight leg raise, no tenderness, swelling or redness, and plaintiff's lumbar spine had full range of motion. R. at 345. After reviewing this evidence, the ALJ gave Dr. Lopez's

opinion "partial weight" because he determined that some of Dr. Lopez's restrictions were inconsistent with his own clinical findings and other clinical findings in the record. R. at 17. The ALJ gave partial weight to Dr. Lopez's opinion that plaintiff would not miss work due to pain or require frequent breaks to lie down. *Id*. However, the ALJ found that, because Dr. Lopez's clinical findings showed plaintiff had excellent strength and no more than bulging thoracic discs, the lifting, sitting and standing restrictions were not entitled to great weight. *Id*. The ALJ found that these findings appeared to rely primarily on plaintiff's own subjective statements. *Id*.

Based on a review of the record, the Court finds that the ALJ did not err when he gave Dr. Lopez's opinion only partial weight. First, Dr. Lopez's check-mark list from September 12, 2008 was not accompanied by any clinical findings, an explanation of how Dr. Lopez arrived at the listed restrictions, or any evidence linking his list with the objective results from the same day. *See* R. at 319. As the ALJ notes, the objective clinical findings from the same date as the check-mark list show normal muscle strength, a straight spine, no swelling, redness, and a normal gait. *See* R. at 345. These results are similar to earlier ones. On May 19, 2007, Dr. Furfari found that plaintiff had normal strength in all major muscle groups of the upper and lower extremities and plaintiff had no muscle weakness or atrophy. *See* R. at 258-59. On July 26, 2007, Dr. Albert Hattem found that plaintiff's biceps tendon was normal, the rotator cuff was intact, and that plaintiff's condition was stable. *See* R. at 295.

Generally, treating physicians' opinions are entitled to great weight, but these opinions have to be accompanied by "medically acceptable and clinical laboratory

7

diagnostic techniques." *Hackett*, 395 F.3d at 1174.  Here, the ALJ discussed Dr. Lopez's findings and gave specific, legitimate reasons for rejecting his opinion. The ALJ did not discount Dr. Lopez's opinion solely because he found the restrictions relied on plaintiff's subjective reports; rather, the ALJ also relied on the medical findings of other treating physicians in the record. Accordingly, the Court finds no error in the ALJ's decision to give Dr. Lopez's opinion only partial weight, *see Watkins*, 350 F.3d at 1301, which is supported by substantial evidence in the record.

    Plaintiff's next contention is that, because the ALJ rejected a treating physician's opinion, he was required to mechanically apply each of the six factors from 20 C.F.R. § 404.1527(d). The Tenth Circuit held in *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), that an ALJ need not expressly discuss each factor from the regulation in his written decision. Indeed, as *Oldham* points out, not every factor will apply in every case. *Id*. The ALJ need only provide a reviewing court with enough of an explanation of his analysis of a treating physician's opinion to allow the court to determine how much weight the ALJ accorded to the opinion and the reasons the ALJ gave the source weight. *Id*.

    The ALJ described both the lack of objective medical evidence to support Dr. Lopez's opinion and the fact that other medical evidence in the record was inconsistent with some of Dr. Lopez's findings. R. at 17. The ALJ noted that the limitations Dr. Lopez placed on plaintiff's ability to lift and carry 10 pounds conflicted with the objective clinical findings of excellent strength, normal gait, and full range of motion. *Id*. Additionally, the ALJ noted that all the other objective medical evidence in the record

found no nerve root impingement or stenosis in the spine and no more than minimal changes in the right shoulder. *See, e.g.,* R. at 199; *see also* R. at 258; R. at 309. Because the ALJ provided specific, legitimate reasons for giving Dr. Lopez's opinion partial weight, and his decision reflects consideration of the appropriate factors, the Court finds no error with the ALJ's findings. *See Watkins*, 350 F.3d at 1301. Although they do not directly track the factors in 20 C.F.R. § 404.1527(d), they allow this Court to properly review the ALJ's analysis on appeal. *Firkins v. Astrue*, No. 08-cv-01207-CMA, 2009 WL 1575184, at *9 (D. Colo. June 3, 2009).

Additionally, plaintiff argues that the ALJ did not consider his MRI from 2001. First, the Court finds that the 2001 MRI is outside of the relevant period. As plaintiff was found not disabled in a previous decision by the Commissioner on February 6, 2004, R. at 70, plaintiff's disability onset cannot be before that period. Additionally, plaintiff claims that his disability began on July 1, 2006. R. at 113. Thus, because it fell outside of the relevant period, the ALJ did not have to accord weight to the 2001 MRI. *Grabczyk v. Astrue*, No. 09-cv-02155-WYD, 2010 WL 3894113, at *3 (D. Colo. Sept. 30, 2010).

Nevertheless, the Court finds that considering the 2001 MRI would not have materially affected the ALJ's decision, as the previous ALJ found that plaintiff was at maximum medical improvement ("MMI") as of November 29, 2001. R. at 66. The previous ALJ also found that plaintiff could lift up to 10 pounds, but noted that a Functional Capacity Evaluation showed that he could in fact lift up to 25 pounds. R. at 67. Moreover, plaintiff returned to work as a tire technician in 2005 until 2006 where he regularly lifted objects that weighed between 50 and 100 pounds. R. at 173. Thus,

although relevant, the probative value of the 2001 MRI does not outweigh the recent medical opinions of the treating sources.

### b. Dr. Kristin Furfari

Plaintiff argues that the ALJ erred when he gave partial weight to Dr. Furfari's evaluation. Docket No. 11 at 23. Plaintiff claims that Dr. Furfari should be given less weight, not more, than Dr. Lopez's opinion. *Id*. Plaintiff contends that rejecting Dr. Furfari's lifting and carrying limitations but accepting the rest of her opinion was an error. *Id*. at 24.

On May 19, 2007, Dr. Furfari performed a medical evaluation of plaintiff. Dr. Furfari concluded that plaintiff could sit, stand, or walk for six hours during an eight-hour workday, and lift and carry 50 pounds occasionally and 25 pounds frequently. R. at 259. Dr. Furfari also added unspecified restrictions for bending, stooping, and crouching. *Id*. The ALJ afforded "partial weight" to Dr. Furfari's conclusions which indicated that plaintiff could remain on his feet for the majority of the workday and should have some postural restrictions. R. at 16. The ALJ found that Dr. Furfari's assessment that plaintiff could stand for six hours in an eight-hour workday was consistent with clinical findings of "spinal tenderness." *Id*. However, the ALJ found that Dr. Furfari's conclusion that plaintiff could lift up to 50 pounds appeared excessive. *Id*.

The Court is not persuaded by plaintiff's contention that Dr. Furfari's opinion with regard to plaintiff's ability to work for eight hours should have been given less weight than Dr. Lopez's opinion. First, the ALJ gave Dr. Furfari "partial weight" on her conclusion that plaintiff could work on his feet for the majority of the workday, R. at 16,

which was consistent with the clinical findings of spinal tenderness. *Id*. Dr. Furfari's opinion is also consistent with Dr. Quick's finding of tenderness in the spine and right arm. R. at 320. Moreover, it is consistent with Dr. Lopez's clinical findings that plaintiff had normal muscle strength in the spine both on December 2, 2008, R. at 333, and September 12, 2008. R. at 344-45. Thus, although deference is usually afforded to treating source opinions, in appropriate circumstances the opinions of other physicians may be entitled to greater weight. *See Webb. v. Astrue*, No. 10-cv-01616-REB, 2011 WL 124443, at *4 (D. Colo. Jan. 14, 2011). Here, the ALJ did not reject Dr. Lopez's opinion and he gave both Dr. Lopez and Dr. Furfari's opinions the same amount of weight. Because the ALJ's decision was supported by substantial evidence in the record, the Court finds no error. The ALJ properly demonstrated plaintiff's functional capacities through clinical and other medical evidence. *See Watkins*, 350 F.3d at 1301.

### c.  Other Medical Opinions

Plaintiff argues that the ALJ gave no weight to Laura Stearns, a State Agency Decision Maker. Docket No. 11 at 23. An SDM is not a medical professional and his or her opinion is entitled to no weight. *Klobas v. Astrue*, No. 08-cv-02324-REB, 2010 WL 383141, at *5 (D. Colo. Jan. 29, 2010); *see Velasquez v. Astrue*, No. 06-cv-02538-REB, 2008 WL 791950, at *3 (D. Colo. March 20, 2008) (an SDM has no medical credentials and thus his or her opinion is entitled to no weight). Further, as an SDM's opinion does not represent the first-hand, direct observations of a lay witness, it does not even constitute evidence from "other non-medical sources" pursuant to 20 C.F.R. § 404.1513(d)(4). Therefore, the Court finds no error in giving this opinion no weight.

To the extent that plaintiff argues Physician Assistant Lori Downey's letter was persuasive, R. at 18, the Court disagrees.  Ms. Downey's letter simply states that "Arturo Knudson is currently unable to work due to ongoing health issues.  At this time, it is uncertain when and if he will be able to return to full time employment."  R. at 274.  The ALJ determined that this letter deserved no weight because it did not present objective findings and did not identify specific limitations.  R. at 17.  The Court agrees.  Ms. Downey's letter provided no explanation or objective support accompanying her letter.  Moreover, Ms. Downey is not an acceptable medical source.  *See* 20 C.F.R. § 404.1513(c)(1).

Plaintiff claims that, although the ALJ afforded "great weight" to Dr. Quick's opinion, the RFC does not represent Dr. Quick's opinion.  Docket No. 11 at 22.  The ALJ gave "great weight" to Dr. Quick's opinion that plaintiff avoid the use of impact and power tools and maintain a 20 pound weight restriction.  R. at 16.  The ALJ also found that Dr. Quick's opinions that plaintiff had tenderness in the arm or spine were credible, but the ALJ believed that more restrictions were necessary than those provided by Dr. Quick.  *Id*.  In the RFC, the ALJ found that plaintiff could only occasionally "reach[] with the right upper extremity" and that plaintiff could perform light work except that "when using the right upper extremity only, [plaintiff] would be limited to lifting and carrying within the sedentary exertional range."  R. at 13.  Based on this evidence, the Court finds that Dr. Quick's opinion is reflected in the RFC, and the ALJ accurately explained the weight and the reasons for the weight given to the opinion.  *Hackett*, 395 F.3d at 1174.

### *2. The ALJ's Credibility Findings*

Plaintiff argues that the ALJ wrongfully determined that some of his testimony was not credible. Docket No. 11 at 28. Plaintiff claims that the ALJ ignored the testimony that he could lift ten pounds "but not that often" because of the pain. *Id*. Plaintiff also contends that the ALJ failed to consider that plaintiff's testimony about his level of pain was supported by the record.

"Credibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Tenth Circuit precedent does not require a formalistic factor-by-factor recitation of the evidence so long as the ALJ sets forth specific evidence he relies on in evaluating the claimant's credibility. *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009).

During the hearing, plaintiff testified that he could only lift 10 pounds. R. at 33. Plaintiff also testified that he could not tie his laces, wore slip-on shoes, R. at 31, had to lie down to alleviate his pain, R. at 32, could not vacuum, had his niece do his laundry. R. at 34. The ALJ found that plaintiff's testimony was not credible because it was inconsistent with the evidence in the record. R. at 16. For example, on September 15, 2006, plaintiff complained of shoulder pain; however, the MRI revealed no significant abnormality and Dr. Milton Waldron told plaintiff that he should begin to use his shoulder as normally as possible. R. at 304. In May 2007, plaintiff reported tingling sensation in his right hand and arm, yet the sensory examination showed no changes in the upper extremities. R. at 311. Again, on July 12, 2007, although plaintiff

self-reported ongoing shoulder pain, Dr. Timothy Sandell found no redness, swelling, or pain behaviors. R. at 309. Dr. Sandell also found that the MRI showed no changes, and he did not feel there were other additional treatment options. During Dr. Furfari's examination on May 6, 2007, plaintiff was able to sit, walk, climb on and off the examination table, and take off his shoes without difficulty. R. at 256. Finally, plaintiff's testimony that he needed to lie down frequently was refuted by Dr. Lopez, who opined that plaintiff would not need to alternate between lying down or taking several breaks at work. R. at 319. Accordingly, the ALJ found that, although the claimant had some limitations, there was no evidence in the record to support plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms. R. at 16.

The ALJ also found that plaintiff's reports of pain were not supported by the objective medical findings in the record. The objective record showed no nerve root compressions or stenosis in the spine and minimal abnormalities in the right shoulder. R. at 16. Plaintiff was found to have excellent strength in all extremities, his right shoulder and right carpal tunnel syndrome surgeries were considered successful, and he had no neurological deficits. *Id.*

The ALJ noted inconsistencies in the record between plaintiff's subjective reports and the clinical and laboratory findings that did not support the reports of increased pain. R. at 16. Primarily, plaintiff's self-reports during the hearing such as the inability to tie his shoelaces were refuted by the record which showed that plaintiff could walk, sit, and climb Dr. Furfari's examination table. R. at 256. The ALJ also found that plaintiff's pain reports were inconsistent with plaintiff's rare visits to his primary care physician, and that symptoms only worsened after the notice of disability hearing. R. at

14

16.  In conclusion, after the examining the record as a whole, the Court is persuaded that the ALJ's credibility findings are closely and affirmatively linked to substantial evidence in the record.  See Kepler, 68 F.3d at 391.

### 3. The ALJ's RFC Assessment

The Court finds that the ALJ did not err in formulating plaintiff's RFC.  An ALJ must assess a claimant's RFC "based on all of the relevant medical and other evidence."  20 C.F.R. § 404.1545(a)(3).  The ALJ's summary of the medical records and plaintiff's treatment evidences his consideration of all the relevant medical evidence.  See R. at 13-19.  The ALJ is required to link his RFC finding to credible evidence in the record.  See Moon v. Barnhart, 159 F. App'x 20, 22-23 (10th Cir. 2005) (remanding where ALJ rejected two medical opinions and "made an RFC finding in between them" without specifying what evidence he relied on to do so).

Plaintiff's arguments stem primarily from perceived errors with the medical opinions and plaintiff's credibility.  However, after determining that there were no errors with regard to the medical opinions or the ALJ's credibility determination, the Court finds that the RFC is supported by substantial evidence in the record.  First, the limitation on the right upper extremity is supported by Dr. Quick's limitation of 20 pounds, R. at 320, and it is also based on the ALJ's rejection of Dr. Furfari's opinion that plaintiff could lift objects in excess of 50 pounds.  R. at 16.  The need to alternate between sitting and standing is supported by Dr. Furfari's opinion, R. at 255, partially supported by Dr. Quick's opinion of slight tenderness  R. at 320, and Dr. Lopez's medical findings that plaintiff had normal strength in his upper and lower extremities.  R. at 345.  Moreover, plaintiff's ability to work a full-time job is directly supported by the ALJ's adoption of Dr.

Lopez's opinion that plaintiff would not miss work due to pain and fatigue or need to take breaks to lie down. R. at 16. Accordingly, the Court finds that the RFC is well-supported by substantial evidence in the record.

To the extent plaintiff argues that the current ALJ's RFC errs because it has more restrictions than the previous ALJ's ruling on February 6, 2009, the Court finds this argument unavailing. The previous ALJ's RFC found that plaintiff could

> lift and/or carry up to 10 pounds occasionally and lesser weights more frequently. He can sit for at least 6 hours in an 8-hour workday, and he can stand and/or walk for 2 hours in an 8-hour workday. He requires a sit-stand option, allowing him the ability to change positions every 45-60 minutes. He can not perform work requiring him to more than occasionally lift his arms above shoulder level.

R. at 67. The current ALJ's RFC does not vary greatly from the previous RFC as they both require a sit/stand option for plaintiff to change positions and they both require limited ability to carry objects above the right upper extremity. They only significantly differ in the 10 pound weight restriction. *See* R. at 13. The Court finds no error with the ALJ's RFC because it is substantially supported by all the evidence. *Cf. Campbell v. Bowen*, 822 F.2d 1518, 1521-22 (10th Cir. 1987) (holding that the ALJ did not err in changing claimant's RFC from sedentary to light work after remand).

### 4. Step Five: Significant Number of Jobs

Plaintiff argues that the ALJ's determination at step five is flawed because the RFC failed to limit plaintiff to sedentary work. Docket No. 11 at 35. Plaintiff claims that the ALJ provided plaintiff with two RFCs and only used the more lenient of the two RFCs when posing hypothetical questions to the VE. *Id.* at 36. Plaintiff also asserts that, because the positions of video rental clerk and parking lot attendant require

frequent reaching, they do not comport with the ALJ's RFC. *Id.* at 37. Plaintiff contends that by subtracting the video rental clerk position and the parking lot attendant jobs, there are only 121 jobs available in Colorado, which does not satisfy the statutory definition of "significant number." *Id.*

As a threshold matter, because the Court has found that plaintiff's RFC is supported by substantial evidence, the Court rejects plaintiff's argument that the ALJ's step five determination was flawed. Moreover, the ALJ did not provide plaintiff with two RFCs; rather, the ALJ's RFC is clearly identified in the record, R. at 13, and the cited language by plaintiff, R. at 17, is merely the ALJ's discussion of the evidence.

At step five, the ALJ must consider vocational factors (the claimant's age, education, and past work experience) and determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Here, the ALJ relied upon the testimony of the VE and found that plaintiff could perform the position of a parking lot attendant (DOT #915.473-010, light, SVP 2). However, the VE discounted the number of parking lot attendant jobs by 20% in order to account for plaintiff's need to alternate between standing, walking, and sitting positions, and found that there were 35,000 parking lot attendant positions available nationally and 560 available in Colorado. R. at 43. The VE also found that plaintiff could perform the job of a video rental clerk (DOT #295.467-018, light, SVP 2) with 30,000 available jobs nationally and 400 available jobs in Colorado. R. at 42. Additionally, the VE found that plaintiff could perform the job of a scale attendant (DOT #222.387-074, light, SVP 2) with 18,000 available jobs nationally and 121 available in Colorado. R. at 42.

The Court rejects plaintiff's argument that the positions of a video rental clerk and a parking lot attendant did not comport with the ALJ's RFC. First, as the VE testified, the position of a video rental clerk allows an employee to walk, sit, stand, or reload the videos at his or her discretion. R. at 43. Thus, although the position may require frequent handling, an employee in this position would have the freedom to reload or handle videos whenever it was convenient. Moreover, this type of work requires only light exertion and there is no indication that the video rentals would ever exceed the sedentary exertional range. R. at 43. Similarly, the VE discounted the number of positions available for parking lot attendants by 20% in order to exclude positions that would not allow plaintiff to alternate between standing, sitting, and walking positions as needed. R. at 43. Accordingly, the Court finds that the VE's determination that plaintiff could perform the position of video rental clerk and parking lot attendant was supported by evidence in the record.

Plaintiff's argument that the total number of positions available is not a significant number is unconvincing. Based on the VE's testimony, there were a combined total of 1194 positions available to plaintiff within Colorado. The Court finds that the combination of 1194 positions available in Colorado with 79,900 positions available nationally is more than a significant amount of existing jobs that plaintiff is capable of performing. *See Botello v. Astrue*, 376 F. App'x 847, 850 (10th Cir. 2010) (declining to remand based on plaintiff's challenge to number of jobs when jobs in Colorado equaled 757, but there were 67,250 jobs in the national economy); *see also Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) ("it appears to be well-established that 1,000 jobs is a significant number"). Given that there are a significant number of positions available to

plaintiff, the Court finds that the ALJ was not required to further inquire of the VE about the details of the positions.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Commissioner's finding that the plaintiff is not disabled under the Act is based upon substantial evidence and represents a correct application of the law.  As a result, the Commissioner's decision is **AFFIRMED**.

DATED March 30, 2012.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge